IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:13CR26** |
| vs. | |
| | **MEMORANDUM AND ORDER** |
| ARTURO W. TORRES, | |
| Defendant. | |

This matter is before the court after a hearing and briefing on defendant's motion to continue, *see* Filing No. 68, Motion; Filing No. 71, text minute entry, and on defendant's notice of unconstitutionality, Filing No. 70.[1]  The defendant has been charged with two counts of causing and attempting to cause a domestic financial institution to fail to file reports required under 31 U.S.C. § 5313(a),[2] in violation of 31 U.S.C. § 5324(a)(1) & (d)(1), and one count of structuring, assisting in structuring, and attempting to structure transactions with a domestic financial institution for the purpose of avoiding reporting requirements under § 5313(a), in violation of 31 U.S.C. § 5324(a)(3).  Filing No. 1, Indictment.  The Indictment also contains a forfeiture allegation

---

[1] In his motion to continue, defendant sought time to investigate an IRS policy change as reported in the New York Times, and sought discovery materials related to the government's identification of forfeiture targets.  *See* Filing No. 69, Defendant's Brief at 4.  The court continued the trial and ordered briefing on the issue.  Filing No. 71, text minute entry.

[2] Under the Currency Transaction Reporting Act, 31 U.S.C. § 5313, a bank is required to report transactions in excess of $10,000.  *See United States v. Besmajian*, 910 F.2d 1153, 1158 (3d Cir. 1990).  The purpose of the statute requiring reporting of prescribed transactions involving domestic financial institutions is to aid government in criminal tax and regulatory investigations.  *California Bankers Association v. Shultz*, 416 U.S. 21, 37-38 (1974); *United States v. Tobon-Builes*, 706 F.2d 1092, 1098 (11th Cir. 1983).

regarding $24,077.91 in United States currency under 31 U.S.C. § 5317.  Filing No. 1,
Indictment at 3.

The defendant now challenges the constitutionality of 31 U.S.C. § 5317(c)(2).[3]
He seeks a refund of $24,077.90 that was seized by the government, with interest;
"further discovery as to the Government's use of the seizure and forfeiture process as a
revenue generating source" and "Rule 16 production with regard to revenue generating
by the IRS and other agencies using 31 U.S.C. §5317 and §5324."  Filing No. 73,
Defendant's Reply at 13.

I.    FACTS

The record establishes the following sequence of events.   In June 2012,
$24,077.91 in United States currency was seized pursuant to a seizure warrant issued
by United States Magistrate Judge Thomas Thalken.   Filing No. 72-2, Government
Response, Ex. 2, Warrant and Application.  The seizure warrant was supported by the
affidavit of a United States Internal Revenue Service ("IRS") Special Agent Derrick Tarr,

---

[3] That statute regulates search and forfeiture of monetary instruments for
reporting and structuring violations under the Currency Transactions Reporting Act, 31
U.S.C. § 5311, *et seq.*  31 U.S.C. § 5317(c).  Specifically subsection (c)(2) involves civil
forfeiture and provides that

Any property involved in a violation of section 5313, 5316, or 5324 of this title, or
any conspiracy to commit any such violation, and any property traceable to any
such violation or conspiracy, may be seized and forfeited to the United States in
accordance with the procedures governing civil forfeitures in money laundering
cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

18 U.S.C. § 5317(c)(2).

.

attesting that there was probable cause to believe that funds up to the amount of $158,560.00 in an account the defendant maintained at First National Bank of Omaha constituted "property traceable to and/or property involved in transactions in violation of Title 31 U.S.C. § 5324, and as such is subject to forfeiture to the United States pursuant to the provisions of Title 31 U.S.C. § 5317(c)." [4]   *Id.*, Ex. 2, Warrant and Application at 8. The defendant concedes he received notice, by letter dated August 6, 2012, that the property had been seized and that administrative proceedings had been initiated to perfect forfeiture of the property.  Filing No. 69, Defendant's Brief at 1; Filing No. 73, Defendant's Reply at 3.  The government states in its brief that the defendant filed a "seized asset claim form" on August 31, 2012.  Filing No. 72, Government Response at 3.   Further, the government states that on November 30, 2012, the government contacted defendant's counsel regarding the imminent criminal charges and the defendant, with the advice of counsel, agreed to allow the government to retain the funds until January 31, 2013, or such time as the parties would enter into a superseding agreement or criminal proceedings result in an indictment.  *See id.* at 4; Filing No. 72, Government Response, Ex. 3, letter dated January 2, 2012, attached agreement dated December 26, 2012. (Filing No. 72-3 at 1-2).  The Indictment was filed on January 23, 2013.  Filing No. 1, Indictment.

The defendant argues that "there is no evidence that Mr. Torres was involved in any of the kind of criminal conduct of the kind that 31 U.S.C. §§ 5317 and 5324(a) were designed to prevent."   Filing No. 73, Defendant's reply at 3.   He argues the

---

[4] Section 5324 prohibits structuring transactions to avoid reporting requirements. 31 U.S.C. § 5324.

government's conduct served to cut off his "opportunity to be heard " and served to "intimidate him with criminal charges for structuring that were and are not designed to criminalize the conduct of innocent people," causing them to abandon their claim to their property and in some cases accept guilt in return for a promise of no incarceration."[5]

Filing No. 73, Defendant's Reply at 3.  He argues he has been deprived of due process in that he was not given an opportunity to be heard on a civil forfeiture; he contends that if he had been given a proper hearing, he could have asserted his innocent owner rights in connection with the civil action.[6]  *Id.*

The government contends that the filing of a valid "seized asset claim form" causes the IRS civil administrative forfeiture to cease "and the matter is referred to the U.S. Attorney's Office for commencement of judicial forfeiture, in this case criminal judicial forfeiture.  Filing No. 72, Government Response at 3.  The Government is then required to file a complaint for forfeiture or include in an indictment or information a

---

[5] Specifically, he argues:

It is Mr. Torres' position that the process used by the Government to initially seize the $24,077.91 from the Defendant's cash and carry business operation, using a civil procedure and process that would have returned said amount to him, but was designed, not only to allow the government to keep said amount, without due process, but to expose the Defendant to criminal charges stemming from a violation of a structuring act which was not designed for that purpose, i.e. was not designed for the criminalization of the acts of an innocent business man and customer of the First National Bank of Omaha.

Filing No. 73, Defendant's Reply at 4-5.

[6] This argument was presumably prompted by a New York Times article criticizing <u>civil</u> forfeiture proceedings and reporting an apparent change in policies regarding civil forfeitures by federal agencies.  *See* Filing No. 69, Defendant's Brief, Attachment 1; Shaila Dewan, Law Lets I.R.S. Seize Accounts on Suspicion, No Crime Required, N.Y. Times, Oct. 25, 2014,www.nytimes.com/2014/10/26/us/law-lets-irs-seize-accounts-on-suspicion-no-crime-required.html.

forfeiture allegation to initiate a criminal or civil judicial forfeiture action within 90 days of the agency's receipt of the claim.  *Id.*   The government concedes that no plea or settlement agreement was reached and no criminal charges were brought within ninety days of the agency's receipt of the defendant's claim.  *Id.* at 3-4.  The government contends, however, that it "took the necessary steps to preserve its rights to maintain the Defendant's property by continuing to investigate any and all potential federal violations, including money laundering, tax evasion and structuring, related to the Defendant and the seized currency."  *Id.* at 4.

II.     LAW

The defendant's challenge involves the interplay between civil and criminal forfeiture actions.  The defendant is charged with structuring financial transactions in violation of 31 U.S.C. § 5324.  The applicable criminal forfeiture statute, 31 U.S.C. § 5317(c)(1), provides in pertinent part:

> The court in imposing sentence for any violation of section . . . 5324 of this title, or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto. . . .  Forfeitures under this paragraph shall be governed by the procedures established in [21 U.S.C. § 853].

31 U.S.C. § 5317(c)(1).  Section 853 provides for pretrial restraint of property that would be subject to forfeiture in the event of conviction.  21 U.S.C. § 853 (e)(1).  Subsection (a) of that statute provides that property subject to forfeiture includes "property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the criminal offense and "property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . ."  21 U.S.C. § 853(a).  Property facilitates a crime when it "'makes the prohibited conduct less

5

difficult or more or less free from obstruction or hindrance.'"  *See United States v. Huber*, 404 F.3d 1047, 1060 (8th Cir.2005) (quoting *United States v. Hawkey,* 148 F.3d 920, 928 (8th Cir. 1998).  To support a forfeiture under § 853(a)(2), "there must be 'something more than an incidental or fortuitous contact between the property and the underlying illegal activity, although the property need not be indispensable to the commission of' the offense." *United States v. Lewis*, 987 F.2d 1349, 1356 (8th Cir. 1993) (quoting *United States v. Premises Known as 3639–2nd Street, N.E., Minneapolis, Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989)).  In other words, a defendant's property is subject to pretrial restraint under § 853(e) only if the property was obtained as a result of the crime or used to facilitate commission of the crime. *United States v. Field*, 62 F.3d 246, 248–49 (8th Cir. 1995) ("Section 853(e) authorizes pretrial restraint only of property associated with the crime, though subsection (p) allows the government to reach substitute assets after conviction."); *cf. United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996) (stating the statute does not authorize preconviction restraints on substitute assets).  The seizure statute at issue herein is a statute pertaining to search warrants for monetary instruments used in structuring and reporting violations and assumes seizure of the instruments as part of that warrant.  *See United States v. Razmilovic*, 419 F.3d 134, 139 n.4 (2d Cir. 2005).

In contrast, civil forfeiture of property involved in or traceable to, structuring offenses are governed by the procedures outlined in 18 U.S.C. § 981(a)(1)(A).  *See* 31 U.S.C. § 5317(c)(2).  Under 18 U.S.C. § 981(a)(1)(C), any property that constitutes or is derived from proceeds traceable to a violation of specified unlawful activities is subject to criminal forfeiture.  *United States v. Schlesinger*, 396 F. Supp. 2d 267, 274 (E.D.N.Y.

6

2005); *see, e.g.*, 18 U.S.C. § 1956(c)(7) (money laundering activities).  Thus, the statute authorizing search and forfeiture of monetary instruments, contemplates that in lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment.  31 U.S.C. § 5317(c).  The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") sets forth the general rules for civil forfeiture proceedings.  18 U.S.C. § 983.  It provides time limits for the government to either file a complaint or obtaining a criminal indictment.  *See* 18 U.S.C. § 983(a)(3).  Pursuant to § 983(a)(3)(A), the Government must file a civil complaint for forfeiture "[n]ot later than 90 days after a claim [by a person claiming property seized in a nonjudicial civil forfeiture proceeding] has been filed." 18 U.S.C. § 983(a)(3)(A).[7]  The Government may also, before the time for filing a complaint is filed, obtain a criminal indictment and "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute."  18 U.S.C. § 983(a)(3)(B).

As a general rule, forfeitures are not favored by the law and statutes providing for forfeitures are strictly construed.  *United States v. Real Props. located at 7215 Longboat Drive*, 750 F.3d 968, 974 (8th Cir. 2014).   "The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing

---

[7] The statute provides:

Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

18 U.S.C. § 983(b)(3)(A) (emphasis added).

similar deadlines and sanctions on the government." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 122–25, 25 n.6 (2001) (discussing the pre-CAFRA lack of statutory deadlines and courts had declined to find due process violations despite lengthy delays in commencing forfeiture actions).  The purpose of the ninety-day time period in [18 U.S.C.] § 983, is to prevent the government from retaining property subject to forfeiture "for an extended period without commencing a judicial action that will give the claimant his day in court."  *Id.* at 144 n.6. The current statutory deadlines were meant to remedy the pre-CAFRA reality, in which statutory deadlines for the commencement of civil forfeiture proceedings were absent.  *Id.* at 122-25.

The Supreme Court recently addressed the purpose and policy behind the federal criminal forfeiture statutes in the context of resolving an issue of pretrial restraint of a defendant's assets where the defendant sought release of the restrained funds to pay for attorney fees.  *See Kaley v. United States*, 134 S. Ct. 1090, 1094 (2014) (involving 21 U.S.C. § 853(e), which authorizes a court to freeze an indicted defendant's assets prior to trial if they would be subject to forfeiture upon conviction).  In *Kaley*, the Court provided the following insight into the law of criminal forfeiture:

> Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes. *See* 21 U.S.C. § 853(a). Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and "lessen the economic power" of criminal enterprises. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989); *see id.*, at 634, 109 S. Ct. 2646 ("Forfeiture provisions are powerful weapons in the war on crime").  The Government also uses forfeited property to recompense victims of crime, improve conditions in crime-damaged communities, and

8

support law enforcement activities like police training.  *See id.*, at 629–630, 109 S. Ct. 2646.   Accordingly, "there is a strong governmental interest in obtaining full recovery of all forfeitable assets."  *Id.*, at 631, 109 S. Ct. 2646.

*Kaley*, 134 S. Ct. at 1094.  The Supreme Court reaffirmed "the constitutionality of such an order so long as it is 'based on a finding of probable cause to believe that the property will ultimately be proved forfeitable.'"  *Id.* at 1094 (quoting *United States v. Monsanto*, 491 U.S. 600, 615 (1989)).  Criminal defendants have no constitutional right to a hearing to contest a grand jury's determination of probable cause to believe they committed the crimes charged.  *Id.*  A pre-trial restraint on a defendant's property must be based on a probable cause showing "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime."  *Id.* at 1095 (citing § 853(a)).  "If the question in a pre-trial forfeiture case is whether there is probable cause to think the defendant committed the crime alleged, then the answer is: whatever the grand jury decides."  *Id.* at 1105.  "Or to put the same point differently, such a freeze is erroneous—notwithstanding the weighty burden it imposes on the defendants' ability to hire a chosen lawyer—only when the grand jury should never have issued the indictment."  *Id.*

Civil forfeiture proceedings and criminal proceedings "are 'merely different aspects of a single prosecution.'"  *United States v. Jones*, 111 F.3d 597, 599 (8th Cir. 1997) (quoting *United States v. Smith*, 75 F.3d 382, 386 (8th Cir. 1996)).  Nothing prevents the government from maintaining a separate civil proceeding during a defendant's criminal trial or bringing a related civil forfeiture proceeding against a criminal defendant's assets after his criminal trial.  *United States v. Williams*, 720 F.3d

674, 703-04 (8th Cir. 2013) *cert. denied*, 134 S. Ct. 1337 (2014); *see Smith*, 75 F.3d at 386 (no cause for concern when parallel civil forfeiture complaint filed two days after related criminal indictment); *Jones*, 111 F.3d at 599–600 (no cause for concern where civil forfeiture action initiated prior to criminal trial, stayed pending prosecution, and the stay lifted and civil proceedings continued after the defendants were convicted); *see also United States v. Maull*, 855 F.2d 514, 515 (8th Cir. 1988) (government not barred by res judicata from initiating criminal forfeiture count involving essentially the same property as an already-dismissed civil forfeiture action).

III.   DISCUSSION

The court finds the defendant's position is not tenable.  His arguments relate to a civil forfeiture and not to a criminal forfeiture.  Any violation of CAFRA time-limits by the government was neither egregious nor lengthy.  The record shows that the government provided notice to the defendant of potential criminal charges one day after the expiration of the 90-day period.  It appears the government acted diligently in prosecuting the instant case and there is no evidence of bad faith.  The government secured an agreement with respect to the return of the property in a timely manner and, had it been unable to obtain an agreement, could have requested additional time to file a forfeiture complaint or to obtain an Indictment under 18 U.S.C. § § 983(a)(3)(A), and the Court would likely have granted its request.

The evidence shows that the government made an effort to comply with both the spirit and letter of the law and there is no indication that it attempted to frustrate the purpose of the statutory deadline by holding the defendant's property for an extended period without commencing forfeiture proceedings.  It is the government's prerogative to

pursue civil or criminal forfeitures or both.  The sequence of events indicates that the government continued to investigate the propriety of criminal charges and the defendant agreed that it should do so, at least until January 31, 2012.  The indictment was filed within that period.

Under these circumstances, the court declines to construe procedural civil forfeiture requirements so strictly as to preclude a criminal forfeiture that is authorized under the statutes.  The grand jury found probable cause to support the charges in the indictment and the magistrate judge, relying on the IRS Special Agent's affidavit, concluded that there was probable cause to believe the funds in question constituted property traceable to and/or involved in violations of 31 U.S.C. § 5324.  There is no evidence before the court that the grand jury should not have issued the indictment.  The court finds the defendant's assets were properly restrained under the statute and no due process violation has occurred.

IT IS HEREBY ORDERED:

1.      The defendant's "notice of unconstitutionality," construed as an objection to the prosecution of this action, is overruled.

2.      The parties are directed to contact the chambers of United States Magistrate Judge Thalken for a status conference and further progression of the case.

DATED this 6th day of February, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge